[Cite as *State v. Flanagan*, 2013-Ohio-5456.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25520 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 12-CRB-2045 |
| v. | : | |
| | : | |
| ERIC C. FLANAGAN | : | (Criminal Appeal from |
| | : | Dayton Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . 

O P I N I O N

Rendered on the 13th day of December, 2013.

. . . . . . . . . . 

JOHN J. DANISH, Atty. Reg. #0046639, and STEPHANIE L. COOK, Atty. Reg. #0083743, by
MATTHEW KORTJOHN, Atty. Reg. #0083743, City of Dayton Prosecutor's Office, 335 West
Third Street, Room 372, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. #0067714, Robert Alan Brenner, LLC, Post Office Box
341021, Beavercreek, Ohio 45434-1021
        Attorney for Defendant-Appellant

. . . . . . . . . . . . 

HALL, J.,

        {¶ 1}    Eric C. Flanagan appeals from his conviction and sentence on one count of

public indecency in violation of R.C. 2907.09(A)(3), a third-degree misdemeanor.

        {¶ 2}    In two related assignments of error, Flanagan challenges the legal sufficiency and

manifest weight of the evidence to support his conviction.

{¶ 3} The record reflects that Flanagan's conviction stems from his participation in sexual conduct in a parked car in a parking lot. At his jury trial, the State presented testimony from four witnesses. The first witness was Detective Raymond St. Clair. He testified that he observed Flanagan stop and pick up a woman on Xenia Avenue in Dayton. Based on his experience and the woman's behavior, St. Clair suspected that she was a prostitute. He proceeded to follow Flanagan's vehicle for ten to fifteen minutes in an unmarked car. He watched as Flanagan eventually pulled behind an industrial building at the end of Dayton Wire Parkway near Troy Street. It was approximately 8:20 p.m. when Flanagan parked near the building. St Clair testified that the sun was setting and it was "getting close to getting dusk."

{¶ 4} Staying out of Flanagan's sight, St. Clair approached the south side of the building on foot and waited for assistance. While waiting, he peered around the corner and saw Flanagan's car parked on the west side of the building, which housed a business known as Dayton Wire Products. Flanagan's car was facing south near the building. After a few minutes, Detectives Doug George, Brian Dedrick, and Jason Barnes arrived to assist St. Clair. The detectives then made a coordinated advance toward Flanagan's car. St. Clair rushed the car on foot while the other detectives drove up to it in two vehicles with their high beams on.

{¶ 5} St. Clair testified that he shined a flashlight in the driver's window. He saw Flanagan reclined in the driver's seat with his pants around his knees. Flanagan's passenger, Alicia Albrektson, was bent down with her head in his lap. According to St. Clair, she appeared to be performing oral sex. Upon seeing the detectives, Albrektson became startled and sat up, exposing Flanagan's penis to the detectives.

{¶ 6} The State's next witness was Detective George. He testified that it was dusk and

"becoming dark" when he arrived at Dayton Wire Products. George turned on his high beams and drove his truck "nose-to-nose" with Flanagan's car. He saw Flanagan reclined in the driver's seat. Because of the height difference between Flanagan's sports car and the detective's truck, George could see Albrektson's head in Flanagan's lap. Based on the circumstances, he could tell that Albrektson was performing oral sex.

{¶ 7}     The State's third witness was Detective Dedrick. He testified that it was dusk but not dark when he arrived at the scene. Dedrick explained that he and Detective Barnes drove around the building and stopped about ten feet from the passenger's side of Flanagan's car. He saw Flanagan reclined in the driver's seat. He did not notice Albrektson until she "popped up" when he was approximately twenty feet from Flanagan's car. Dedrick testified that she appeared to be startled, and he opined that she was performing oral sex.

{¶ 8}     The State's final witness was Detective Barnes. He testified that he rode with Detective Dedrick to the scene. He stated that it was "dusk and getting dark." Upon approaching Flanagan's car, he saw Flanagan reclined in the driver's seat. While still in Detective Dedrick's vehicle and with the headlights on, he was able to see Albrektson leaning over toward the driver's seat. Dedrick quickly exited the vehicle and, using a flashlight, was able to see Albrektson's head in Flanagan's lap. Based on Albrektson's position, Barnes believed she was performing oral sex.

{¶ 9}     Following the State's case, the trial court overruled Flanagan's Crim.R. 29 motion for judgment of acquittal. Flanagan then testified in his own defense and denied engaging in sexual activity with Albrektson. He explained that he and Albrektson were friends and that they went behind the building to talk privately and to drink beer. Flanagan stated that it was

"starting to get dark" at the time. He testified that he purposely sought out an area that was not populated. When he found the industrial area around Dayton Wire Products, he "figured there wouldn't be very many people out" and "it would basically be an abandoned area." Flanagan also testified that the side windows of his car were legally tinted. On cross examination, he admitted knowing there were some businesses in the area where he parked. He stated, however, that he made sure Dayton Wire Products was not open for business and that no "traffic flow" was present.

{¶ 10} Based on the evidence presented, a jury found Flanagan not guilty of violating R.C. 2907.09(A)(1) or R.C. 2907.09(A)(2). It found him guilty of violating R.C. 2907.09(A)(3). The trial court imposed a partially suspended jail sentence, a fine, and other sanctions. The trial court stayed execution of the sentence pending the outcome of this appeal.

{¶ 11} In his first assignment of error, Flanagan contends the State presented legally insufficient evidence to support his conviction. When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 12}   With the foregoing standards in mind, we find legally insufficient evidence to convict Flanagan under R.C. 2907.09(A)(3), which states:

> No person shall recklessly do any of the following, under circumstances in which the person's conduct is likely to be viewed by and affront others who are in the person's physical proximity and who are not members of the person's household: * * * Engage in conduct that to an ordinary observer would appear to be sexual conduct[.]

{¶ 13}   Viewing the evidence in a light most favorable to the State, we do not believe a rational trier of facts could have found all of the foregoing elements proven beyond a reasonable doubt.   The evidence certainly is sufficient to support a finding that Flanagan engaged in conduct that to an ordinary observer would appear to be sexual conduct and that his conduct would be likely to affront others.

{¶ 14}   We find no evidence, however, to support a finding that Flanagan engaged in such conduct under circumstances in which it was *likely* to be viewed by others. The evidence before us suggests that Flanagan's conduct was *unlikely* to be observed by anyone. Ariel photographs of the scene show that Flanagan stopped his car in a relatively isolated, industrial area. The record contains no evidence of any vehicles or people present at Dayton Wire Products other than Flanagan, Albrektson (who undoubtedly was not affronted), and the detectives. (Trial Tr. at 83). Based on the photographs, it appears that Flanagan's car was fairly well concealed on three sides. The only direction from which he reasonably could have been seen was the south—the direction toward which his car faced.[1] From that direction, Flanagan's car may have

---

[1] Although there was another building and parking lot beyond some trees to the west of Dayton Wire Products, the record contains

been visible from two parking lots of a business south of Dayton Wire Products or, beyond that, from Heid Drive.

{¶ 15}   At trial, Detective St. Clair testified that, from his vantage point at the corner of the Dayton Wire Products building, he could see at least one vehicle moving in the parking lots to the south. He also could see some traffic on Heid Drive. (*Id*. at 80-81). St. Clair estimated that the distance from Dayton Wire Parkway itself (which was just south of the Dayton Wire Products building) to the south parking lots where he saw vehicular movement was seventy feet. St. Clair estimated that Heid Drive was another seventy feet beyond the south parking lots. (*Id*. at 81).[2] He opined that occupants of vehicles in the south parking lots could have seen where Flanagan had parked. (*Id*. at 82). Lacking in his testimony, however, is whether anyone in these locations could see people inside the car or what was happening therein.

{¶ 16}   It does not reasonably follow that anyone in the south parking lots or on Heid Drive likely would have seen Flanagan and Albrektson, at dusk, engaged in conduct that appeared to be sexual. From his position at the corner of the building near Flanagan's car, St. Clair himself could not see Flanagan's lap as the detective was near the ground. (*Id*. at 100). After coming around the corner, St. Clair was able to see Albrektson "leaned over in [Flanagan's] lap." (*Id*. at 87). He could not say whether any part of Flanagan's body would have been visible from Heid Street or the south parking lots. (*Id*. at 101).

{¶ 17}   Detective George similarly testified that he first saw Albrektson when he pulled

---

no evidence of activity there or any ability to see what Flanagan was doing from there.

[2]St. Clair admitted he did not measure the distances. *Id.* But his estimates are more than generous for the prosecution. The well-defined aerial photos indicate those distances are more than double his estimates, making the distance from Flanagan's car to Heid Drive over 100 yards.

his truck nose-to-nose with Flanagan's vehicle with his high beams activated. (*Id*. at 111). George estimated that the south parking lots were two-hundred feet away from where Flanagan was parked. When asked by the prosecutor whether a person in the south parking lots would have been able to see "Albrektson's head going up or down in the defendant's front seat," George responded affirmatively. Although this testimony might support a finding that Flanagan at least could have been viewed engaging in apparent sexual conduct, it fails to support a conviction because the record is devoid of evidence that Albrektson's head ever was "going up or down." The detectives testified only that, upon approaching the vehicle, they saw her head in Flanagan's lap. Moreover, the fact that a person could have seen apparent sexual activity does not mean such an observation was likely.

{¶ 18}  As for Detective Dedrick, he did not even notice Albrektson until she "popped up" when he was approximately twenty feet from Flanagan's car. His testimony could not possibly support a finding that anyone in the south parking lots or on Heid Street likely would have seen Flanagan, at dusk, engaged in conduct that appeared to be sexual. Similarly, Detective Barnes mentioned first seeing Albrektson "face down towards Mr. Flanagan's lap" as he and Dedrick approached Flanagan's car. (*Id*. at 156). Therefore, his testimony does not support a finding that anyone in the south parking lots or on Heid Street likely would have seen Flanagan engaged in apparent sexual conduct.

{¶ 19}  In short, even if the evidence supports a finding that apparent sexual conduct between Flanagan and Albrektson *could* or *might* have been visible, the State's evidence is insufficient to support a finding that Flanagan's conduct was *likely* to be viewed by others.[3]

---

[3]We recognize, of course, that the detectives did view sexual conduct between Flanagan and Albrektson. In order to do so,

**{¶ 20}** Finally, assuming arguendo that Flanagan's conduct was likely to be viewed by others, the State's evidence is insufficient to establish that he acted *recklessly* with regard to that fact. The Revised Code provides that "[a] person is reckless with respect to circumstances, when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C). Here Flanagan drove his companion to a relatively isolated, industrial area at dusk and received oral sex in a closed car where he could look south and monitor the only direction from which he reasonably might have been observed. These facts simply do not support a finding that Flanagan acted with heedless indifference or perversely disregarded a known risk that he was likely to be observed engaged in apparent sexual activity. Whatever else might be said about Flanagan's conduct, he did not engage in an act of public indecency within the meaning of R.C. 2907.09(A)(3).

**{¶ 21}** The State's reliance on *State v. Bellomy*, 2d Dist. Montgomery No. 21452, 2006-Ohio-7087, and *Columbus v. Abdalla*, 10th Dist. Franklin No. 97APC08-973, 1998 WL 211929 (April 30, 1998), fails to persuade us otherwise. In *Bellomy*, the defendant was convicted of violating R.C. 2907.09(A)(3) for engaging in sexual activity while in a car "traveling down a public street in view of pedestrians or passing motorists" and after the car had stopped in a residential neighborhood. *Bellomy* at ¶ 33. In a two-to-one decision, this court upheld a finding that the defendant's conduct was likely to be viewed by others. Other than the fact that both cases involved sex acts in a car, the facts of *Bellomy* bear no similarity to Flanagan's case. Flanagan did not engage in sexual activity amidst others on a public street or in a residential neighborhood. He

---

however, they carefully concealed their presence and then coordinated a rush toward Flanagan's vehicle. Absent these extraordinary efforts, we do not believe Flanagan's activity was likely to be viewed by the detectives.

went to a relatively isolated, industrial area at dusk where no one was likely to see him.

**{¶ 22}** The State's reliance on *Abdalla* is equally unpersuasive. In *Abdalla*, the defendant was convicted of violating a public-indecency ordinance for (1) standing next to an undercover officer in the parking lot of a public park and masturbating through his jeans and then (2) proceeding to masturbate through his jeans in his own car while still in the officer's presence. *Abdalla* at *1-2. Once again, other than the fact that some of the defendant's sexual activity in *Abdalla* occurred inside a car, we see no similarity between the facts of that case and Flanagan's case.

**{¶ 23}** Based on the reasoning set forth above, we hold that the State presented legally insufficient evidence to convict Flanagan under R.C. 2907.09(A)(3). His first assignment of error is sustained. The second assignment of error, which raises a manifest-weight-of-the-evidence issue, is overruled as moot.

**{¶ 24}** The trial court's judgment is reversed, and Flanagan's conviction is vacated.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

John J. Danish / Stephanie L. Cook
Matthew Kortjohn
Robert Alan Brenner
Hon. Daniel G. Gehres

Case Name:    *State of Ohio v. Eric C. Flanagan*
Case No:            Montgomery App. No. 25520
Panel:              Donovan, Hall, Welbaum
Author:             Michael T. Hall
Summary: