[Cite as *State v. Bell*, 2021-Ohio-899.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2020-P-0060** |
| ASHLIE R. BELL, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Municipal Court, Kent Division, Case No. K 2019 CRB 756.

Judgment: Affirmed in part; reversed and vacated in part; remanded.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, Ohio 44266 (For Plaintiff-Appellee).

*Charles Tyler, Sr.*, 137 S. Main Street, Suite 206, Akron, Ohio 44308 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Ashlie R. Bell, appeals her misdemeanor convictions of assault and endangering children, following a bench trial in the Kent Division of the Portage County Municipal Court. The trial court sentenced Bell on each count to 180 days in jail to be served concurrently and a $1000.00 fine, with 120 days and $500.00 suspended upon compliance with conditions. The trial court granted a stay of sentence pending

appeal. We reverse and vacate the conviction of endangering children, affirm the finding of guilt as to assault, and remand for the trial court to enter sentence accordingly.

{¶2} R.C. 2151.23(A)(6) confers exclusive original jurisdiction on the juvenile court to "hear and determine all criminal cases in which an adult is charged with" endangering children in violation of R.C. 2919.22(B)(1), "provided the charge is not included in an indictment that also charges the alleged adult offender with the commission of a felony arising out of the same actions that are the basis of the alleged violation[.]"

{¶3} Here, the state of Ohio acknowledges that the trial court, a municipal court, did not have jurisdiction to try Bell on the charge of endangering children. Accordingly, Bell's conviction for endangering children in violation of R.C. 2919.22(B)(1) is void and is hereby vacated. *See Patton v. Diemer*, 35 Ohio St.3d 68, 518 N.E.2d 941 (1988), paragraph three of the syllabus ("A judgment rendered by a court lacking subject matter jurisdiction is void *ab initio.*") and *State v. Wilson*, 73 Ohio St.3d 40, 652 N.E.2d 196 (1995), paragraph two of the syllabus ("The exclusive subject matter jurisdiction of the juvenile court cannot be waived."); *see also State v. Taylor*, 2d Dist. Montgomery No. 27731, 2018-Ohio-4048, ¶ 21 and *State v. Reynolds*, 12th Dist. Warren No. CA2019-08-077, 2020-Ohio-4354, ¶ 5-6.

{¶4} We therefore proceed to Bell's assignments of error solely as they pertain to her conviction for assault. Bell advances two assignments of error:

> [1.] The trial court erred to the substantial prejudice of the defendant-appellant by denying Ms. Bell's motion for acquittal when at the close of the state's case the state failed to prove beyond a reasonable doubt the essential elements of the offense.
>
> [2.] The trial court committed error in finding that the appellant is guilty of assault and child endangering against the weight of

2

evidence when the prosecutor failed to proof [sic] all the essential elements of the offense beyond reasonable doubt.

{¶5} Bell challenges the denial of her Crim.R. 29(A) motion for judgment of acquittal and claims her conviction for assault is against the manifest weight of the evidence.

{¶6} A Crim.R. 29(A) motion challenges the sufficiency of the evidence to support a conviction. *State v. Wright*, 11th Dist. Portage No. 2000-P-0128, 2002 WL 480328, *2 (Mar. 29, 2002). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, citing *Jackson v. Virginia*, 443 U.S. 307 (1979). "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶7} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Id.* at 387. Further, a determination of whether a conviction is against the weight of the evidence "necessarily rests on the existence of sufficient evidence to support the conviction." *State v. McCrory,* 11th Dist. Portage No. 2006-P-0017, 2006-Ohio-6348, ¶ 40.

3

{¶8} "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.'" *Thompkins* at 386 (emphasis sic), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

{¶9} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

{¶10} "The [factfinder] is the sole judge of the weight of the evidence and the credibility of the witnesses. It may believe or disbelieve any witness or accept part of what a witness says and reject the rest. In reaching its verdict, the [factfinder] should consider the demeanor of the witness and the manner in which he testifies, his connection or relationship with the prosecution or the defendant, and his interest, if any, in the outcome." *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *accord State v. Miller*, 4th Dist. Hocking No. 18CA3, 2019-Ohio-92, ¶ 28 ("The trier of fact is free to believe all, part, or none of the testimony of any witness, and we defer to the trier of fact on evidentiary weight and credibility issues because it is in the best position to gauge the

witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility." (Citations omitted.)) Therefore, because "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts," "'the discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *Thompkins* at 376, quoting *Martin* at 175.

{¶11} Bell was convicted of assault, in violation of R.C. 2903.13(A): "No person shall knowingly cause or attempt to cause physical harm to another * * *." "Physical harm" includes "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "[D]irect evidence of the accused's actual knowledge would not ordinarily be available and that knowledge could be imputed by the use of circumstantial evidence." *State v. Rubal*, 11th Dist. Lake No. 7-178, 1980 WL 352149, *1 (Mar. 31, 1980).

{¶12} A four-year-old nonverbal autistic student was part of an integrated pre-kindergarten classroom taught by Bell at Brimfield Elementary. Relevant to the assault charge, the state presented evidence of two incidents that occurred between Bell and the child in February 2019.

{¶13} On February 13, Bell's classroom assistant (Beth Fulst) and another kindergarten teacher (Kaitlin Hess) witnessed an incident in the school's gym. Fulst testified the child had thrown a toy, and after he retrieved it, Bell attempted to remove the

5

toy from the child's hand. Fulst saw the child scratch Bell and try to bite her. "And at that point she [Bell] kicked his legs out from behind him and he went down to the ground." Bell sat behind the child and started playing with him, tickling and scratching. Hess observed the child biting Bell's arm and recalled, "I did not see how she [Bell] got out of the bite, but after that, I watched her kick his legs out, push him to the ground and she gave the illusion of tickling." Hess was across the gym but testified she could see where Bell's "hands had been on his stomach and there were red marks. So if it was tickling, it was very hard tickling." Her testimony further reported that Bell was laughing, but the child was not laughing and was rolling on the ground.

{¶14} On February 27, Hess and an instructional aide assistant in Hess' classroom (Rosalia Matos) observed another incident. Matos and Hess were in the gym with their students when Bell's student came in with black magic marker scribbled on his arms and face. Matos inquired if the child colored on himself, to which Bell responded, "No, I did it to him." Matos testified she later learned the child was trying to draw on Bell, so Bell drew on the child as a form of punishment. Hess specifically recalled a "smiley face" drawn near his shoulder. Hess later heard the child screaming and heard Bell yelling. She looked toward the commotion and saw Bell standing in the vicinity of the child. Matos also recalled the child screaming and a struggle between him and Bell. Matos testified that Bell was standing behind the child, and "one of her hands was holding his arm up to his mouth. Her other hand was holding the back of his head." The hand on the back of the child's head was "pushing it down towards his arm." Matos stated it was unclear what was happening, but the child was upset and crying, and it appeared that

6

Bell was also upset. Matos testified that she later learned the child had bit Bell, "and she [Bell] was trying to make him bite himself back."

{¶15} In addition to these two incidents, Beth Fulst testified she witnessed Bell make the child scratch himself when he was acting out. Fulst recalled their supervisor Kim Meeker met with Bell on February 28, following which Bell told Fulst and another assistant, "We have to stop making [the child] bite himself and scratch himself back."

{¶16} After reporting the incidents, Bell received a formal letter of reprimand from Meeker in a meeting with human resources. The letter referenced, inter alia, that Bell had a child scratch himself and bite himself as means of behavior management within her classroom setting. According to Meeker's testimony, Bell responded that she felt her behavior management techniques had been misconstrued. Bell was required to view multiple online training sessions, including one on child abuse prevention. When asked if this was because Meeker thought Bell was committing child abuse, she responded, "Yes."

{¶17} Shortly thereafter, Fulst, Hess, and Matos each reported Bell to Child Protective Services.

{¶18} Bell testified that she never forced the child to bite or scratch himself, she did not kick the child's legs out from under him, and she never used a marker to draw on the child. She further denied ever telling her assistants that they could no longer make the child bite and scratch himself. Bell claimed the eyewitnesses of both incidents were lying, wrong, or mistaken as to what occurred. The defense also presented testimony from the child's occupational therapy assistant and physical therapist at the school, as well as a student teacher who had interned with Bell during the first half of the school

7

year. None of these witnesses observed the February incidents or observed injuries to the child.

{¶19} Bell argues the state failed to demonstrate the "knowingly" element of assault and challenges the credibility of the state's witnesses. Bell contends the evidence shows she was merely executing her responsibilities as required by the Individualized Education Plan ("IEP") that was specially designed for the autistic child. She further claims her efforts were misconstrued by one of her aides—who lacked experience, knowledge, and an understanding of the child's IEP—and who then spread rumors and made multiple unfounded allegations. Bell's arguments, however, are relevant to purpose, not "knowingly." Regardless of her purpose for acting, the eyewitness testimony, if believed, is consistent with a conclusion that Bell knew her conduct would probably cause physical harm to the child, regardless of its gravity or duration.

{¶20} Based on the foregoing, the evidence is more than sufficient to show that, regardless of her purpose in doing so, Bell knowingly caused physical harm to the child during their interactions in the gym on February 13 and February 27, 2019. The state provided eyewitness testimony to the events that occurred in the gym and testimony, including of the child's father, as to visual observation of scratches and red marks on the child's person. Although there was conflicting testimony as to some points, the factfinder evidently afforded more weight to the testimony of the state's witnesses and found it more credible than Bell's testimony. This is not an exceptional case in which the factfinder clearly lost its way and created a manifest miscarriage of justice.

{¶21}   The trial court did not err in denying Bell's Crim.R. 29(A) motion for judgment of acquittal or in finding Bell guilty of assault.  Accordingly, Bell's first and second assigned errors lack merit.

{¶22}   The judgment of the Portage County Municipal Court, Kent Division, is reversed and vacated with respect to Bell's endangering children conviction, due to lack of subject matter jurisdiction.  The finding of guilt with respect to Bell's assault conviction is affirmed.  The matter is remanded for the trial court to enter sentence accordingly.


CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.

9