[Cite as *State v. Simon*, 2024-Ohio-4972.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO,<br>CITY OF RAVENNA, | CASE NO. 2024-P-0005 |
| Plaintiff-Appellee, | Criminal Appeal from the<br>Municipal Court, Ravenna Division |
| - vs - | |
| STEPHEN WILLIAM SIMON, | Trial Court No. 2022 CRB 01589 K |
| Defendant-Appellant. | |

# O P I N I O N

Decided: October 15, 2024
Judgment: Affirmed

*Victor V. Vigluicci*, Portage County Prosecutor, and *Theresa M. Scahill*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Stephen C. Lawson*, 250 South Chestnut Street, Suite 23, Ravenna, OH 44266 (For Defendant-Appellant).

ROBERT J. PATTON, J.

{¶1} Defendant-appellant, Stephen W. Simon ("appellant"), appeals his conviction for Public Indecency from the Ravenna Municipal Court. For the following reasons, we affirm.

{¶2} On December 1, 2022, appellant was charged with Public Indecency, a violation of R.C. 2907.09(A)(2), and a third-degree misdemeanor. A bench trial was held on November 17, 2023. Appellant was found guilty and sentenced to 30 days in jail with 27 days suspended, payment of court costs within two years, ordered to commit no

violations of law for one year, and declared *persona non grata* at any Walmart store or parking lot.

{¶3} Appellant's charge arose on December 1, 2022, when Officer Matthew Kennedy ("Officer Kennedy") of the Brimfield Police Department was patrolling the Walmart store on Tallmadge Road in Brimfield Township. Officer Kennedy first observed a vehicle running with its headlights on at approximately 3:30 a.m. Officer Kennedy testified at the November 17, 2023, bench trial that he did not think anything was unusual as employees routinely go outside the Walmart Store at all hours to smoke or take a lunch break. When the same vehicle was still running with its headlights on at 6:23 a.m., the officer ran the vehicle license plate through LEADS (Law Enforcement Automated Data System). The search revealed that the vehicle owner's license was suspended, the plates were invalid, and there was an order to confiscate the license plates.

{¶4} The vehicle was parked near the back of the store where Officer Kennedy testified that employees are known to park. Officer Kennedy stated, "[t]here's also cars I'd say within probably 10 or 15 parking spots away because employees will park in the back side of the parking lot." He testified that semi-trucks could be seen parked on the next aisle over. Officer Kennedy further stated that employees come and go at all times of day at the store, and that semi-truck drivers park in the lot overnight.

{¶5} Officer Kennedy testified that at first, the vehicle appeared to be empty. Officer Kennedy did not see anyone who appeared to own the vehicle nearby. The officer approached the vehicle to see if anyone was inside and could see appellant reclined in the passenger seat.

2

{¶6} Officer Kennedy testified that he could see an illuminated phone screen through the windows of appellant's vehicle as he approached. As the officer moved closer, he could see that appellant was exposed below the waist and had his penis in one hand and his cell phone in the other. Officer Kennedy testified that he observed a video of a nude woman playing on the phone and that appellant was masturbating. The officer recorded the incident on his body cam. However, due to the position of the camera, the video of appellant from the waist down was obstructed by the vehicle door. The body cam angle viewed appellant primarily from the chest up, while Officer Kennedy could view appellant's conduct below through the car window.

{¶7} The bodycam footage was admitted as an exhibit at the bench trial and played for the trial court. The video demonstrates that the parking lot was active and populated with vehicles. Appellant's vehicle was parked near the back of the lot, in close proximity to a rear lot entrance. Appellant parked his vehicle in an area that was unobstructed on all four sides. The body cam footage showed that while it was dark outside at that hour in the morning, the parking lot was well-illuminated with multiple lamp posts uniformly positioned throughout the lot.

{¶8} During the eight-minute-long body cam video, 11 different vehicles can be seen entering or exiting the parking lot through the entrance near where appellant was parked. A close review of the body cam video reveals that Officer Kennedy pulled up behind the appellant at approximately 30 seconds into the recording. The officer then exited the vehicle. The body cam then scans the parking lot as the officer turns towards appellant's vehicle showing more than 20 cars in the parking lot. It appears that some are simply parked and uninhabited. Others appear with lights on, indicating that individuals

3

were likely present inside of the apparently operating vehicles. Three parked semi-trucks, parked neatly in a line side by side, are visible just a single aisle over from the appellant.

{¶9} The first vehicle that was actively moving nearby appellant appears at 1 minute and 10 seconds into the body cam footage. A white minivan then drove on a nearby road at a slow rate of speed. The minivan moves past the entrance to the Walmart parking lot.

{¶10} At 1 minute and 21 seconds into the video, a blue car drove past the same entrance onto the public street.

{¶11} At 1 minute and 43 seconds, a white car drove past the very same entrance referenced in the foregoing paragraph. The entrance was located two aisles away from the front of appellant's vehicle and approximately five or six car lengths from where appellant parked.

{¶12} At 1 minute and 49 seconds into the video, that same white vehicle turned into the entrance and into the Walmart parking lot.

{¶13} The foregoing activity of vehicles operating nearby appellant's vehicle occurred contemporaneously with Officer Kennedy talking with the appellant as appellant sat inside his vehicle.

{¶14} Also, at approximately 1 minute and 49 seconds into the video, a truck drove past the officer and appellant in his vehicle and exited the Walmart parking lot through the same nearby entrance.

{¶15} At two minutes into the body cam footage, the white car referenced above was slowly exiting as another car pulled into the entrance and into the Walmart parking lot. The second car drove in front of and past the officer and appellant.

4

{¶16} The officer moved his body position and, as a result, the body cam scans to the left. A different white car parked was in the next aisle over. Behind that white car, is another vehicle with its headlights on, parked at the rear of the semi-trucks, just an aisle over.

{¶17} At 3 minutes and 33 seconds, another car drove past the front of the appellant's vehicle through the parking lot.

{¶18} According to the trial transcript and the body cam, when Officer Kennedy addressed appellant, he told the officer to "F off" and shouted expletives at him. Officer Kennedy asked appellant for his registration, and appellant refused saying, "I don't have to." Appellant continued to shout expletives at the officer and repeatedly told the officer "I hope you die." At one point the appellant explained to the officer that he is a musician and lives in the vehicle. During the interaction Officer Kennedy could see that appellant's pants were unzipped and partially down. The officer told appellant to cover himself up. Appellant complied. Officer Kennedy then cited appellant for Public Indecency.

{¶19} Appellant timely appeals and asserts two assignments of error:

{¶20} [1.] "The trial court erred when it found the [a]ppellant guilty of violating Ohio Revised Code §2907.09(A)(2) as the [S]tate of Ohio did not prove all the elements of the crime charged. Said finding of guilty is against the manifest weight, and the sufficiency of the evidence."

{¶21} [2.] "It was error by the trial court to overrule the motion for acquittal propounded by defense counsel at the conclusion of the trial."

{¶22} Appellant's first assignment of error asks this Court to review the record for both sufficiency and manifest weight of the evidence. Sufficiency of the evidence and

5

Case No. 2024-P-0005

manifest weight are interrelated, yet distinguishable, and accordingly will be analyzed together below.

**Manifest Weight and Sufficiency**

{¶23} ""'Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386, (1997), quoting *Black's Law Dictionary* 1433 (6th Ed. 1990). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*.

{¶24} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *Thompkins*, 78 Ohio St.3d 380, (1997). An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 78 quoting *State v. Martin*, 20 Ohio App.3d 172, (1st Dist. 1983). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as the 'thirteenth juror' and disagrees with the

6

factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, (1982).

**{¶25}** Appellant was charged with violating R.C. 2907.09(A)(2) which states:

> No person shall recklessly do any of the following, under circumstances in which the person's conduct is likely to be viewed by and affront others who are in the person's physical proximity and who are not members of the person's household: * * *
>
> (2) Engage in sexual conduct or masturbation * * *

**{¶26}** Appellant argues specifically that the State did not prove that he acted recklessly, that his conduct was likely to be viewed, or that Officer Kennedy was not a member of the appellant's household.

**{¶27}** R.C. 2901.22(C) describes recklessly:

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

**{¶28}** Appellant contends that Officer Kennedy never testified that appellant's actions were reckless. Appellant contends that he was acting during a time of day when he was not anticipating pedestrian traffic and therefore was not acting without sensitivity to others. Contrary to appellant's assertion, the body cam video indicates that numerous individuals were driving vehicles or otherwise present in the parking lot. Cars were visibly moving through the lot as appellant masturbated, his vehicle was unobstructed, the parking lot was well lit, and a nearby entrance was active with vehicles entering and exiting the lot.

7

Case No. 2024-P-0005

{¶29} Three overnight parked semi-trucks were visible on the body cam footage, and Officer Kennedy testified that employees could be seen at all hours in the parking lot taking their breaks. Officer Kennedy stated that semi-trucks were known to stay overnight in the parking lot, increasing the likelihood that, at 6:30 a.m., the three semi-trucks parked near appellant were inhabited. Officer Kennedy said that he was able to see appellant masturbating from outside of appellant's vehicle as he approached the vehicle from behind, as anyone in the parking lot could have.

{¶30} The fact that Officer Kennedy could see appellant masturbating from some distance away from his vehicle satisfies the element of the offense requiring that it was likely others could see appellant masturbating. However, the conduct required to establish the reckless element does not require that appellant was seen by another. "According to Black's Law Dictionary, 'likelihood' means '[p]robability' and 'imports something less than reasonably certain." Black's Law Dictionary (5Ed.1979) 834, citing *Clark v. Welch* (C.A. 1, 1944), 140 F.2d 271, 273." *State v. Shannon* 2021-Ohio-789, ¶ 35 (11th Dist.) (sufficiency of conviction upheld where defendant was convicted of public indecency for masturbating on the premises of a laundromat where there was a known prevalence of children, and within proximity of a school and women's shelter. A logical expectation that a person *could* be present was enough.)

{¶31} Here, Office Kennedy's body cam captured 11 vehicles entering or exiting the Walmart parking lot, and parked cars in the lot with their headlights on indicating the likely presence of others. Appellant was reckless as he disregarded a substantial and unjustifiable risk that someone would see him masturbating. Other persons driving in close proximity to defendant's vehicle were clearly seen on the body cam, and the law

8

does not require that he was actually seen by one of those individuals. *Id.* at ¶ 35. *See also State v. Plymale*, 2021-Ohio-2918, ¶ 19 (5th Dist.) (sufficient evidence to meet reckless element found where defendant convicted of public indecency for masturbating in public park near heavily trafficked road across the street from residential homes, even though defendant sought a secluded part of the park to conduct his act and was only seen by the arresting officer). *See also State v.* Johnson, 42 Ohio App3d 81, (defendant had no expectation of privacy when performing sexual acts in unlocked stall of outhouse in a public rest area, conviction of public indecency upheld). The sufficiency of evidence regarding the recklessness of appellant's conduct was certainly enough to satisfy the plain language of the statute and related case law applying R.C. 2907.09(A)(2).

**{¶32}** The State is not required to prove anyone saw the conduct as long as the conduct was *likely* to be viewed. *In re W.S.*, 2009-Ohio-5427, ¶ 40 (11th Dist.), citing *State v. Henry*, 2002-Ohio-7180, ¶ 58, (7th Dist.) (where defendant's conduct masturbating in open area of a public restroom was likely to be viewed by and affront others and conviction for public indecency was not against the manifest weight of the evidence). Notwithstanding the fact that seeing the appellant masturbate was not required, Officer Kennedy *did* see the conduct, as again, anyone present in the parking lot could have done.

**{¶33}** Appellant argues that the case, *State v. Flanagan*, 2013-Ohio-5456, (2nd Dist.) is analogous to his own case because the conduct occurred within the confines of a closed car. In *Flanagan*, insufficient evidence was found to support a conviction under R.C. 2907.09(A)(3) not because the conduct occurred in a closed car, but because of the seclusion of the car's location. *Id.* at 14. *Flanagan* is readily distinguishable the instant

9

case, as the Second District found that Flanagan's acts were "*unlikely* to be observed by anyone. * * * The record contains no evidence of any vehicles or people present * * * other than Flanagan * * * and detectives." *Id.* at 14. *Flanagan's* vehicle was concealed on three sides, and the defendant testified that he sought out a location that would "basically be an abandoned" being in an industrial area near Dayton Wire Products. *Id.* at 9-14.

{¶34} Based on the foregoing, appellant's contention that the State failed to prove that he was reckless regarding the likelihood of others seeing him masturbate is deeply flawed.

{¶35} Appellant also asserts that the State did not produce evidence proving that Officer Kennedy was not a member of appellant's household, as the statute requires. Appellant cites *State v. Merritt*, 2021-Ohio-3681, ¶ 9 (5th Dist.), where the victim testifies that she is not a member of the defendant's household. A review of the trial transcript indicates that this exact question was not asked of appellant or Officer Kennedy at trial. However, Officer Kennedy's body cam video was admitted into evidence. In the video, appellant repeatedly asks Officer Kennedy what his name is. After learning the officer's last name, appellant repeatedly asked the officer for his first name. The interaction indicates that appellant and Officer Kennedy did not know each other prior to this incident. This exchange is probative evidence that Officer Kennedy is not a member of appellant's household as they did not know one another. Ohio appellate courts have found that circumstantial evidence that two individuals do not know each other, like asking each other for names, is enough for the trial court to reasonably infer that the individuals were not members of the same household for sufficiency purposes. See *City of Columbus v. Abdalla*, 1998 WL 211929 (10th Dist. Apr. 30, 1998). Appellant's claim that the State failed

10

to prove that he and Officer Kennedy were not members of the same household is also without merit.

{¶36} There is no dispute that appellant was masturbating when Officer Kennedy approached his vehicle in the Walmart parking lot. As noted above, appellant's behavior was likely to be seen given the public orientation of his vehicle's location. *See Plymale*, 2021-Ohio-2918, (5th Dist.) (appellant likely to be viewed by others when masturbating in his vehicle in a public park, appellant's "vehicle was plainly visible to vehicles, pedestrians and bicyclists who passed by the area.").

{¶37} Here, appellant took no measures to seclude himself, he instead parked in view of other parked semi-trucks, operating parked vehicles, and vehicles entering and exiting the parking lot. Individuals were clearly present, as demonstrated by the body cam video. Appellant's actions were plainly visible to Officer Kennedy.

{¶38} The foregoing analysis that focuses on the events depicted in Officer Kennedy's body cam stands in stark contrast to the dissent's conclusion that there was insufficient evidence to establish that appellant was reckless as to the likelihood that others, not members of his household, would see him masturbating and be affronted by it in violation of R.C. 2907.09(A)(2). Officer Kennedy's testimony and corroborating body cam undermine the dissents conclusion that there was a "remote" possibility that appellant could be seen. To the contrary, it was likely that appellant could be seen by others as nothing prevented any of those individuals from driving near appellant or walking past as they exit their vehicle only to have a clear view of what appellant was doing through the windows of his car.

Case No. 2024-P-0005

{¶39} Accordingly, we find that the State successfully met its burden to produce legally sufficient evidence that appellant was acting recklessly regarding the probability of others seeing him masturbate, and that Officer Kennedy was not a member of the appellant's household.

{¶40} Based on the foregoing, it cannot be said, given the evidence in the record, that appellant's conviction was against its manifest weight such that the trial court clearly lost its way.

{¶41} Appellant's first assignment of error is without merit.

### Criminal Rule 29

{¶42} Appellant's second assignment of error asserts that the trial court erred in denying defense counsel's motion for an acquittal based on Crim. R. 29.

{¶43} Crim. R. 29(A) provides in relevant part: "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."

{¶44} "A Crim.R. 29(A) motion challenges the sufficiency of the evidence to support a conviction." *State v. Bell*, 2021-Ohio-899, ¶ 6 (11th Dist.), citing *State v. Wright*, 2002 WL 480328 *2 (11th Dist. Mar. 29, 2002).

{¶45} Our review of the trial record above confirms that the State provided sufficient evidence to support a conviction. Thus, the trial court's denial of appellant's Crim.R. 29 motion for acquittal was appropriate. Appellant's second assignment of error lacks merit.

12

Case No. 2024-P-0005

{¶46} For the reasons stated above, appellant's assignments of error are without merit. The decision of the Ravenna Municipal Court is affirmed.

MARY JANE TRAPP, J., concurs,

JOHN J. EKLUND, J., dissents with a Dissenting Opinion.

_____

JOHN J. EKLUND, J., dissents with a Dissenting Opinion.

{¶47} I respectfully dissent.

{¶48} I would reverse the lower court's judgment because the manifest weight of the evidence did not support a finding of guilt.

{¶49} The State was required to prove, beyond a reasonable doubt, that Appellant recklessly engaged in masturbation, under circumstances in which his conduct was "likely to be viewed by and affront others who are in the person's physical proximity and who are not members of the person's household." R.C. 2907.09(A)(2).

{¶50} "A person acts recklessly when, with *heedless indifference* to the consequences, the person disregards *a substantial and unjustifiable risk* that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." (Emphasis added) R.C. 2901.22(C).

{¶51} Read together, these two statutes required the State to prove Appellant's "heedless indifference" to and disregard for a "substantial and unjustifiable risk" that: (1)

13

Case No. 2024-P-0005

his conduct was likely "to be viewed by others" (a circumstance); and (2) those others would be "affronted" ("a certain result").

{¶52} Rather than acting with "heedless indifference" and disregarding either risk, the manifest weight of the evidence demonstrated that Appellant went to specific lengths to minimize or avoid them both. Moreover, given the factual setting the evidence revealed neither risk was "substantial."

{¶53} When Appellant masturbated, he was not outdoors or near any other person. He chose to act in his car, in a vast Wal-Mart parking lot, in the wee pre-dawn hours on a dark, cold December morning in Portage County, Ohio. He reclined his seat so he was below the window in the passenger door panel. He parked his vehicle 100 yards away from the entrance to the building, where Officer Kennedy saw the nearest persons (we do not know who they were). There was no evidence that anyone, other than the officer, was near Appellant's car. The vehicle nearest to Appellant's was 7-10 parking spaces away, and there was no evidence that it was occupied. Semi-tractors were parked "a couple" of parking aisles distant. There was no evidence at trial about their occupancy. There was nothing to suggest that these circumstances were at all unusual at that hour of the day under the circumstances of this case.

{¶54} Virtually nothing Appellant did reflected a disregard for the risk of being seen by and affronting anyone. Rather, it all bespeaks an acknowledgement of the risks and actions to minimize if not avoid them.

{¶55} R.C. 2901.01(A)(8) defines a "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

14

{¶56} The evidence plainly showed that at the time he acted, Appellant had reduced to marginal the risks of his being seen or affronting anyone.

{¶57} Officer Kennedy testified that when he observed the vehicle at approximately 3:30 a.m., he initially "didn't think anything of it . . ." He said that he drove past the vehicle and "didn't notice anyone in the vehicle." He later elaborated that he did not see anyone in the vehicle or what they were doing as he was "driving up the aisle way" or when he approached the vehicle side-by-side from his vehicle.

{¶58} At about 6:30 a.m., after running the plates through LEADS, the officer said he "exited my patrol car to see if there was anyone inside the vehicle, that when I drove past I didn't notice. And that's where I found Appellant in the passenger's seat." However, the details here are important. Officer Kennedy said that he only saw an illumination coming from the vehicle while he was standing approximately 15-20 feet away. He said he did not see a passenger in the vehicle until he was approximately 5-8 feet away. Also, Officer Kennedy said that then, he could only see a hand holding a phone. He testified that he could not see Appellant's genitalia 5 feet away from the vehicle. Officer Kennedy said that he saw Appellant masturbating only when he was at the vehicle's passenger side window and looked inside.

{¶59} On cross-examination, Officer Kennedy testified that while there were not other people near Appellant's vehicle, "there could have been people around." But, "could have been" is not a "strong likelihood" that they may have been, much less that they would be, close enough to Appellant's car in a vast Wal-Mart parking lot at approximately 6:30 a.m. in December, to see what he was doing. Even Officer Kennedy, an investigating

15

peace officer, could not see what Appellant was doing until he peered through his window at very close range.

{¶60} At most, I would hold that, under the circumstances, there was only a remote or significant possibility that Appellant would be seen masturbating. Officer Kennedy's trial testimony supports finding that there was not a "strong possibility" that Appellant's conduct was likely to be viewed by another. And, however one might characterize the levels of risk, he certainly did not exhibit a heedless indifference to them.

{¶61} The majority's opinion's discussion of whether Appellant was "likely to be seen" really only matters if he acted with "heedless indifference" and disregarded certain risks. I think he manifestly did not.

{¶62} That said, in *State v. Shannon*, 2021-Ohio-789 (11th Dist.), we did plumb the depths of that issue, but only because the defendant so plainly acted with "heedless indifference." We affirmed his conviction on evidence that he exposed his private parts while between "dumpsters in the city of Warren near a school and outside a laundromat frequented by adults with children." *Id.* at ¶ 37.

{¶63} Of course we did. It was in broad daylight on a city street where a passerby's mere turn of her head would have subjected her to the defendant's licentiousness. That is a far cry from the circumstances before us here.

{¶64} The time of day, the season, the vastness of a Wal-Mart parking lot, Appellant's reclining his seat below the door panel window, and the absence of evidence of anybody who could have done what was necessary (according to the officer's testimony) to see what Appellant was doing describe circumstances that I would say did not create a "substantial and unjustifiable risk" of his being seen and affronting

16

anyone. Apparently, he had been there in his car for some three hours, and there was no evidence that anyone other than Officer Kennedy had peeked in on him. Was it possible that someone might have? Maybe, but that is not the controlling standard. I would find that it was not "probable" or "likely."

{¶65} In considering this type of case, I believe context is everything. In a Wal-Mart parking lot, there is a palpable difference between 10:00 a.m. on the Saturday of Memorial Day weekend and the pre-dawn hours of early December.

{¶66} I do not condone Appellant's behavior. But the question before us is whether or not he violated R.C. 2907.09(A)(2). I would find the manifest weight of the evidence showed he did not.

{¶67} For the foregoing reasons, I would reverse.

17